MASSA, J.,
dissenting.
Notwithstanding my admiration for the majority’s desire to do justice in this case, I fully join Justice David’s dissent. I write separately to offer an additional comment about discretion.
As Justice David notes, Ms. Sargent drove her car to work at Wal-Mart, where she then committed an employee theft of four cell phones. While at work, she loaned her car to a friend to run an errand. The friend returned the car, and it was in the Wal-Mart lot when Sargent was caught. There is, in my judgment, sufficient evidence that Sargent constructively possessed her car and that it was “intended for use ... to transport” the phones, and thus technically eligible for forfeiture.
But really? Firing Sargent and having her'righteously prosecuted for felony theft was not enough? The State had to take her car, too?
*735 This overreach has now, it seems, prompted our Court to grant some modest, almost equitable, relief to the excessively punished thief via the possible return of a twenty-year-old Buick. It brings to mind the often quoted maxim that hard cases make bad law. The more complete quote from Baron Rolfe in 1842 applies today to Ms. Sargent’s case: “This is one of those unfortunate cases in which ... it is, no doubt, a hardship upon the plaintiff to be without a remedy, but by that consideration we ought not to be influenced. Hard cases, it has frequently been observed, are apt to introduce bad law.” Winterbottom v. Wright, (1842) 152 Eng. Rep. 402 (Exch. of Pleas) 405-06. Indeed. Stay tuned for arguments by more appropriate targets of forfeiture laws that they didn’t “possess” their new Mercedes because they weren’t sitting in it at the time of their arrest.
This is not the first time in recent years that we have seen an almost comical deployment of law enforcement Weapons of Mass Destruction against pedestrian targets. In Miller v. State, 992 N.E,2d 791 (Ind.Ct.App.2013), trans. denied 7 N.E.3d 993 (Ind.2014), the prosecutor used the RICO statute[1] against a common home burglar who stole a TV, computer, and credit cards, and subsequently tried, unsuccessfully, to use the cards at department, drug, and liquor stores on the same night. The Court of Appeals vacated the racketeering conviction, but in so doing may have created precedent that could frustrate future applications of the statute; the Attorney General certainly so argued without success in our Court. Oral Arg. Video Tr. at 33:34-36:38.[2]
Our Constitution and statutes vest police and prosecutors with great power to initiate proceedings that can ultimately deprive liberty and divest property where certain crimes are proven. State and federal legislative bodies have provided the special tools of RICO and forfeiture largely to target organized crime[3] and narcotics trafficking.[4] These tools are not without their critics, and their misuse invites further scrutiny.[5] Moreover, when authori *736 ties overreach, the judiciary is tempted to impose remedies that do justice in a particular case but may do harm to the law over time.
The answer, sometimes, to Rolfe’s truism about hard cases, is to not bring them in the first place.

. "A person ... who is employed by or associated with an enterprise, and who knowingly or intentionally conducts or otherwise participates in the activities of that enterprise through a pattern of racketeering activity[] commits corrupt business influence, a Class C felony.” Ind.Code § 35-45-6-2 (2008).

. We heard oral argument in Miller with the order on transfer pending. We ultimately declined to accept jurisdiction over the appeal. Time will tell if the Attorney General's fears — which needn't be further explained for the purposes of this dissent — are realized.

. George Robert Blakey, known for his role in drafting legislation that became the Federal Racketeer Influenced and Corrupt Organization Act, codified at 18 U.S.C. §§ 1961-68, traces RICO’s development, beginning with the government's attempt to understand the Mafia and culminating with text meant to "combat[] organized crime and other syndicated activity as well as the infiltration of legitimate entities by criminal groups.” G. Robert Blakey, RICO: The Genesis of an Idea, Trends in Organized Crime, June 2006, at 8, 16.

. Although forfeiture has a long history, its use has increased substantially in the past thirty years, hailed as an effective means of addressing drug trade. United States v. Parcel of Land & Residence at 28 Emery St., 914 F.2d 1, 3 (1st Cir.1990) (“One of the most powerful weapons in the government’s arsenal in the continuing ‘war’ on drugs is its ability to obtain the civil forfeiture of property that is used for or facilitates violations of the drug laws.”). In addition to "punishing and deterring those who engage in illegal drug activity,” a purpose of the forfeiture statute is to “defray some of the expense incurred in the battle against drug dealing.” Katner v. State, 655 N.E.2d 345, 347-48 (Ind.1995).

. See, e.g., Eric Moores, Reforming the Civil Asset Forfeiture Reform Act, 51 Ariz. L. Rev. 777, 779 (2009) ("[Current] procedural safeguards are minimal and police seize property *736 with virtually no oversight.’’); Editorial Board, When Police Play Bounty Hunter, USA Today (Nov. 20.2014), http://www.usatoday. com/story/opinion/2014/11/19/police-civil-asset-forfeiture-profit-drug-trafficking-editorials-debates/19299879/ ("The programs, born in the 1970s to seize ill-gotten gains from drug trafficking, have become unmoored from their original intent of taking the profit out of crime.”). Even former directors of the Justice Department’s Asset Forfeiture Office have called for an end to the initiative they worked to create, finding "it particularly painful to watch as the heavy hand of govemment goes amok." John Yoder & Brad Cates, Government Self-Interest Corrupted a Crime-Fighting Tool into an Evil, Wash. Post (Sept. 18, 2014), http://www.washingtonpost.com/ opinions/abolish-the-civil-asset-forfeiture-program-we-helped-create/2014/09/18/72f08 9 ac-3d02-lle4-b0ea8141703bbf6f_story.html? wpmk=MK0000203. Such criticism is not limited to the national stage; a recent report raised several concerns about our state and local practices. Kristine Guerra, Seized Assets: Star Finds Cases of Cars, Homes Taken— And Owners Not Charged, The Indianapolis Star, Feb. 22, 2015, at Al.